UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE: )
JOHN BARONE and )
JUDITH BARONE ) Chapter 7
 )
       Debtors ) Case No. 04-21479
 )

APPEARANCES:

John J. O'Neil, Jr., Esq.
Francis O'Neil & Del Piano, 255 Main Street, Hartford, CT 06106
Counsel for Debtor Judith Barone

Mitchell J. Levine, Esq.
Nair and Levin, 707 Bloomfield Avenue, Bloomfield, CT 06002
Counsel for Claimant Robert J. Milne

Thomas C. Boscarino, Esq.
Boscarino, Grasso & Twachtman, 628 Hebron Avenue, Building 3, Glastonbury, CT 06033
Chapter 7 Trustee

RULING PARTIALLY SUSTAINING OBJECTION TO PROOF OF CLAIM #11

KRECHEVSKY, U.S.B.J.

I.

The matter before the court is the objection of Judith Barone ("the debtor" or "Mrs. Barone") to the amended Proof of Claim #11 ("the POC") filed by Robert J. Milne ("Milne") on July 9, 2007 and amended July 17, 2007. The POC asserts an unsecured nonpriority claim against the debtor's bankruptcy estate for $54,286.25 for accounting services allegedly rendered to the debtor concerning the estate[1] of Jeanette F. Vennewald ("the Vennewald

---

[1] References herein to such estate include the Jeanette F. Vennewald Revocable Living Trust. The debtor's mother died prepetition; thus the claims against the Vennewald estate arose prepetition and, upon filing of the petition, became property of the debtor's

estate"), the debtor's deceased mother. The debtor's objection alleges that Milne had agreed to a flat fee of $8,000; she argues that Milne agreed to seek payment for such services only to the extent that he could recover from the Vennewald estate.

II.

BACKGROUND

A. Bankruptcy Proceedings

The debtor and her husband, John Barone ("Mr. Barone") (together "the debtors"), on May 13, 2004, filed a joint Chapter 7 bankruptcy petition ("the petition") and both received discharges on August 12, 2004. In the petition, the debtor scheduled as an asset a "testamentary trust disbursement" valued a t $5,000, and claimed an exemption therein of $1.00. The petition neither scheduled a debt due to Milne nor included him in the list of creditors.

On September 22, 2005, a notice was sent to the scheduled creditors informing them that the trustee expected to recover assets and setting a bar date of December 21, 2006 for filing proofs of claim. The court, on August 3, 2006, granted the Chapter 7 trustee's motion to compromise pending state-court actions concerning the debtor's claims against the Vennewald estate and its executor. The settlement of $110,000 to the debtor's bankruptcy estate was sufficient to pay the allowed claims of all scheduled creditors and provide a surplus of approximately $50,000 to the debtor. The debtor, on March 1, 2007, amended her bankruptcy schedules B (personal property) and C (exemptions) to reflect the settlement.

On July 9, 2007, Milne, a certified public accountant, filed his POC asserting a $54,286.25 (as amended on July 17, 2007) claim for prepetition professional services

---

bankruptcy estate.

2

provided to the debtor[2] in connection with her interest in the Vennewald estate. The debtor, on July 18, 2007, filed an objection, pro se, requesting disallowance of Milne's claim and alleging that:

> 2. The Debtor and [Milne] never spoke of any monetary fees. [Milne] spoke only with Debtor's husband, [Mr. Barone], regarding any fees. The amount of $8,000 was agreed on verbally. No written contract was ever established as the parties involved were friends.
>
> 3. Debtor's husband, [Mr. Barone], has been sending [Milne] a monetary amount on a monthly basis for over one year as an agreed upon payment plan for the agreed upon $8,000 fee. Debtor's husband, [Mr. Barone], also performed extensive work (i.e., installed wood floors, etc.) on two homes owned by [Milne], as consideration, in part, for [Milne's] services.

(Objection ¶2,3.)

The debtor having failed to appear at the hearing, the court, on August 29, 2007, issued an order overruling her objection. Attorney John J. O'Neil, Jr., Esq., on September 17, 2007 filed an appearance on behalf of the debtor, and the court, on November 2, 2007, granted the debtor's request to vacate the August 29th order. At the January 18, 2008 hearing on the debtor's objection to Milne's POC, the parties presented their documentary evidence and the testimony of the debtors and Milne. The debtor and Milne subsequently filed briefs in support of their positions.

## B.  Evidentiary Hearing

The following is a synopsis of the evidence adduced at the hearing. Milne, a certified public accountant, was Mr. Barone's accountant and a long been a friend of his family. The debtor's mother, Jeanette Vennewald, died in 2001 and Mark Ferraro, Esq. ("the fiduciary"), Vennewald's attorney, became executor of her estate in the East Hartford Probate Court

---

[2] Milne acknowledges that his claim is against the debtor's estate only. (Milne Opening Brief ¶4.)

3

("the probate court"). At that time, Milne began helping the debtor sort through her mother's financial records.

There is no written fee agreement, or "engagement letter," concerning fees and the parties' disagree as to whether they reached any agreement at that time as to Milne's fees. Milne testified that: "As a matter of firm practice, I don't use engagement letters. It's usually an hour, hourly rate, based upon an hour... It's a flat hourly rate and I just deal with it verbally." (Tr. at 57.) He testified that he discussed fees with the debtor at the outset and informed her that he charged $95.00 per hour. The debtor testified that she had not had such discussions with Milne and that she thought he was helping her as a friend. Mr. Barone testified, and the debtor's objection concedes, that he and Milne had agreed on a flat fee of $8,000. Mr. Barone also testified that he had worked, without charge, installing wood floors in two homes owned by Milne.

None of the parties dispute that they agreed to seek payment from the Vennewald estate, and, on February 27, 2003, the debtor wrote to the probate court and requested a hearing on that matter. On March 19, 2003, the probate court held a hearing concerning "Compensation for Robert Milne" and, on that date, issued its decree ("the probate decree"), which states, in relevant part:

> Based on the evidence presented, the Court finds that Judith Barone hired Robert Milne, CPA, to assist her in dealing with financial records pertaining to the decedent's estate.
>
> Robert Milne sent an invoice to "Estate of Jeanette F. Vennewald c/o Judith Barone" requesting payment of $8,075 for 85 hours of work at an hourly rate of $95.00.
>
> Judith Barone maintains that Robert Milne's work benefited [sic] the estate and that allowing Robert Milne to go through financial records at the fiduciary's office amounted to an engagement of Robert Milne's services. The estate did not have a signed agreement with Robert Milne and the

4

fiduciary maintained that he never engaged the services of Robert Milne.

Under ordinary circumstances, only the fiduciary can contract services on behalf of a decedent's estate. A beneficiary, as such, does not have authority to act as an agent for a decedent's estate. Robert Milne was hired after the decedent had died so none of the bill in question is for services rendered to the decedent.

The fiduciary acknowledged that Judith Barone was requested to assist the estate by going through the papers at the decedent's home and forwarding those relevant to the decedent's estate to the fiduciary. Judith Barone testified that her mother kept all of her papers over several decades in a rather confused state. She also said that she herself was not always certain what papers were relevant to the decedent's estate. She further testified that it would have been very difficult for her physically to have gone through the papers without assistance.

The court finds that the fiduciary did not engage Robert Milne's services and that the decedent's estate is not responsible to him for payment for his services. It was Judith Barone's decision to hire him and she is responsible for his bill. However, Judith Barone is entitled to reimbursement for Robert Milne's services to the extent that those services made it possible for her to find and forward relevant documents to the decedent's estate.

It is clear that the primary reason Judith Barone hired Robert Milne was to provide her with financial information. She has an adversarial relationship with the fiduciary and trust is an issue. She was within her rights to hire an accountant to in effect do an audit of the affairs of the estate, but the exercise of that right is at her own expense.

It is not feasible to precisely determine what part of Robert Milne's work directly benefited [sic] the estate but a fair resolution would reimburse Judith Barone for 15% of her accountant's bill or $1,211.25.

Wherefore, it is ORDERED AND DECREED that:

Judith Barone shall be entitled to $1,211.25 in reimbursement costs she incurred in assembling and forwarding documents relevant to the decedent's estate to the fiduciary.

(Milne Exh. 1.)

Milne testified that he had sent only two invoices for his work concerning the Vennewald estate, one dated December 31, 2001 and one dated May 22, 2006, both of which

he attached to his POC. He also testified that every few months he either mailed or faxed to the debtor a copy of his worksheets, with "John Barone" written at the top, that contain columns of handwritten numbers which Milne stated are the total hours worked each week on matters for the debtor; no dollar amounts, payments or billing rates appeared on such worksheets.

III.

DISCUSSION

A. Standing

"A claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code] is deemed allowed, unless a party in interest ... objects.... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim... and shall allow such claim in such amount, except to the extent that... such claim is unenforceable against the debtor and property of the debtor ..." 11 U.S.C. §502(a), (b).

Having received proceeds of $110,000 from the compromise of claims against the Vennewald estate and its fiduciary, the debtor's bankruptcy estate has a surplus of approximately $50,000 after payment of all scheduled, timely filed, allowed claims. Although Milne's claim was filed long after the bar date had passed, a late filed claim, if allowed, may be entitled to a distribution from a solvent estate. See 11 U.S.C. §726(a)(3) (assigning allowed unsecured claims that are tardily filed a priority below such claims that are timely filed). Because the debtor would, if Milne's claim is disallowed, be entitled to the surplus funds in the estate, she has standing to object its allowance. See, e.g. In re Jorczak, 314 B.R. 474, 479 (Bankr. D.Conn. 2004) ("[I]f there is a sufficient possibility that the estate is solvent and will yield a surplus to the debtor, the chapter 7 debtor has standing to object

to proofs of claim.").

### B. Collateral Estoppel

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L.Ed.2d 210, 217 (1979). The doctrine of collateral estoppel, if applicable, bars relitigation of issues determined by the final decree of a probate court as well as other state and federal courts. See Conn. Gen. Stat. §45a-24 (validity of probate decrees); see, also In re McNamara, 281 B.R. 799, 803 (Bankr. D.Conn.,2002) (collateral estoppel applicable to probate decrees; citing Nikitiuk v. Pishtey, 153 Conn. 545, 551-52, 219 A.2d 225 (1966); Lundborg v. Lawler, 63 Conn.App. 451, 456, 776 A.2d 519 (2001)).

Milne's argues that "the doctrine of res judicata / collateral estopple [sic] should bar the Debtor's objection to Mr. Milne's claim;" he contends that the fee arrangement between the debtor and Milne "was actually and necessarily litigated and necessarily decided between the same exact parties" in the probate court. (Milne Opening Brief at 5.) The court concludes that such doctrines are inapposite to the present proceeding.

First, a probate court is a court of limited jurisdiction whose powers are limited to those expressly conferred upon it by statute. See Conn. Gen. Stat. §45a-98. The probate court's jurisdiction did not encompass the adjudication of a dispute between the debtor, a beneficiary of a decedent's estate and Milne. Insofar as the issue presently before the bankruptcy court is concerned, the probate court was not, and did not purport to be, a "court of competent jurisdiction." The probate decree properly limited its scope to the

7

determination of the liability of the Vennewald estate for the value of the services provided by Milne; its statements concerning any relationship between Milne and the debtor are dicta. In addition, the matter before the probate court was limited to its consideration of Milne's fee of $8,075 and, even if it had the necessary jurisdiction and had actually and necessarily determined the allocation of such fee, it would have had no preclusive effect as to the additional fees subsequently claimed by Milne.

### C.   Burdens of Proof and Production

Fed. R. Bankr. P. 3001(f), Evidentiary Effect, provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of such claims."

> [T]he burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Fed. R. Bankr.P. 3001 by alleging facts in the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

In re Jorczak, 314 B.R. at 481.

The debtor does not dispute the prima facie effect of Milne's POC. The court finds that the debtor's testimony and that of Mr. Barone, together with the documentary evidence produced at the hearing, were adequate to shift the burden to Milne of producing sufficient evidence to prove his entitlement to his claim by a preponderance of the evidence.

Although the testimony of all of the witnesses concerning their oral agreement or lack thereof is contradictory, the court finds most plausible and consistent with all of the evidence

8

Mr. Barone's testimony that he and Milne had agreed on a flat fee of $8,000 for Milne's assistance with the Vennewald estate. Milne's testimony that the debtor agreed to an hourly fee of $95 is unsupported by anything other than the two invoices he claims to have sent during the entire period from 2001 through May 22, 2006. One such invoice is dated December 31, 2001, but shows, without indicating a payment date, a credit of $1,211.25 as "Payments ordered by East Hartford Probate Court." (Exh. B.)[3] The probate court, however, did not hear the matter or issue its decree until March 19, 2003. At the present hearing, the debtor's attorney asked Milne if the $8,075 considered by the probate court was the amount then due and owing for his services to that point; Milne testified that "at that time that's what the services were up to that point in time." (Tr. at 60.) In the second invoice, dated May 22, 2006, Milne alleges to have spent an additional 554.25 hours, 505.50 of those prior to the debtors' May 13, 2004 petition date, on such services. The court finds that Milne's billing practices, particularly sending only two invoices over a six-year period, inconsistent with his testimony as to his arrangement with the debtors.

The court concludes that the Milne has not met his burden of proving the validity and amount of his claim by a preponderance of the evidence. The court finds more credible the evidence that Milne had agreed with Mr. Barone to assist the debtor with the Vennewald estate for the flat fee of $8,000 and that, even if the debtor had not participated in the initial discussion between Milne and Mr. Barone, Mr. Barone was acting with apparent authority from her, in which she subsequently acquiesced, prior to seeking payment in the probate court from the Vennewald estate. Having thus concluded that the parties had an express

---

[3] Such invoice also indicates another undated credit of $600.00 as "Legal Dispute P.T.," leaving a balance due of $6,263.75.

9

contract, Milne's arguments as to implicit contracts or quasi-contracts are inapposite.

IV.

CONCLUSION

In accordance with the forgoing discussion, the court concludes that Milne's claim is allowed to the extent of $6,263.75 (the balance due from the invoice dated December 31, 2001) and disallowed as to the balance. It is

SO ORDERED.

Dated at Hartford, Connecticut this 25th day of March, 2008.

                                ROBERT L. KRECHEVSKY
                                UNITED STATES BANKRUPTCY JUDGE